734 So.2d 1126 (1999)
The STATE of Florida, Appellant,
v.
Nicholas Darrell WALLACE, Appellee.
No. 98-2235.
District Court of Appeal of Florida, Third District.
May 12, 1999.
*1127 Robert A. Butterworth, Attorney General and Wendy Benner-Leon, Assistant Attorney General, for appellant.
Bennett H. Brummer, Public Defender and Harvey J. Sepler, Assistant Public Defender, for appellee.
Before SCHWARTZ, C.J., and JORGENSON and GREEN, JJ.
PER CURIAM.
The state appeals an order granting the appellee's motion for judgment of acquittal after a jury had convicted him of unlawful possession of cannabis, trafficking in cocaine and trafficking in illegal drugs, including heroin. In entering this order, the trial court concluded that the state had failed to sufficiently establish the corpus delicti for the crimes charged apart from the appellee's admissions. We disagree with this conclusion and reverse with instructions that the jury's verdict be reinstated and the appellee be sentenced accordingly.
The evidence adduced by the state at trial, viewed in a light most favorable to the state, reveals that Detective Vaughn of the Miami Dade Narcotics Unit received an anonymous tip that a black male, approximately 5'9" to 6' in height and weighing approximately 300 pounds, was conducting narcotics transactions from apartment number 13 of a certain apartment complex. Acting pursuant to this tip, Detective Vaughn established a surveillance of this apartment for two days. During this surveillance period, Detective Vaughn and other police officers observed numerous individuals approach appellee, Nicholas Wallace, outside of the subject apartment. These individuals would briefly converse with Wallace and remain outside as Wallace went inside the apartment. Upon his return, Wallace was observed handing these individuals baggies prior to their departure from the building. Detective Vaughn estimated that four individuals approached Wallace on the first day of the surveillance and five on the second day.
Prior to going to the apartment number 13, Detective Vaughn spoke with Carol Tolbert, the apartment manager, to ascertain the identity of its occupant(s). Ms. Tolbert testified that at the time of the incident, the apartment was being rented to Louise Robinson and Linda Johnson. Ms. Tolbert also testified that after Ms. Johnson leased the apartment, Wallace began to frequent the apartment on a daily basis and it was her understanding that Wallace was Ms. Johnson's boyfriend and that they had a small child together who also resided in the apartment.
Thereafter, Detective Vaughn, along with other officers and a police canine, went to the apartment. Ms. Johnson answered the door; Wallace was not in the apartment when the officers arrived. She provided the detective with her driver's license and informed him that she lived in the apartment with her three year old child who was present and whose name was also Nicholas Wallace. Ms. Johnson provided the police with verbal consent to search her apartment with the dog.[1] The police all testified that she did not appear *1128 to be fearful and was calm and cooperative.
After receiving Ms. Johnson's consent, Sergeant Dallas brought the dog into the apartment and commanded it to search. The dog entered the only bedroom in the apartment and alerted to a night table drawer, but no narcotics were found inside the drawer. Sergeant Dallas testified that that was because the dog had detected a residual odor from drugs that had been previously stored in the drawer. Next, the dog alerted to the closet in the bedroom. The closet contained both men and women's clothing. Sergeant Dallas instructed Detective Vaughn to check the top shelf of the closet. There, Detective Vaughn observed in plain view numerous plastic baggies containing suspected narcotics and drug paraphernalia. The contents of the baggies later tested positive for cannabis, cocaine and heroin.
When Detective Vaughn recovered the narcotics from the closet, he did not question Ms. Johnson about them or arrest her for trafficking or possessing them but he did arrest her on an outstanding bench warrant for driving with a suspended license.[2] The search of the apartment and/or arrest of Ms. Johnson attracted a group of onlookers to the scene.
After Detective Vaughn took Ms. Johnson into custody, Sergeants Dallas and Millard remained behind and waited in a van across the street hoping to see the appellee return to the apartment. Wallace did thereafter return to the apartment and while in the parking lot, he learned from an onlooker that Ms. Johnson had been arrested. When he saw Sergeants Millard and Dallas, he approached them and spontaneously stated that they had arrested his wife, but the drugs were his and not hers and that she did not know anything about the drugs. Sergeant Dallas calmed Wallace down and assured him that his wife had not been arrested for drugs. Wallace was then handcuffed to await the return of Detective Vaughn to the scene.
Detective Vaughn testified that upon his return to the scene, Wallace spontaneously stated to him also that the drugs found in the closet belonged to him and that his wife had nothing to do with the drugs because she is a Christian. Detective Vaughn transported Wallace to the police station and after being given his Miranda warnings, Wallace indicated his desire to talk to the police without the presence of an attorney. Thereupon, Wallace stated that he did not want his wife to be involved and that maybe he would provide the police with information about the houses from which he purchased the narcotics. Wallace indicated that he obtained the tancolored substance from a flea market but denied that it was heroin.
Finally, the state called Mario William Soria to the stand. Wallace informed Mr. Soria that he [Wallace] lives in apartment number 13 of the subject apartment complex. Mr. Soria further testified that he had visited Wallace at this apartment on an occasion. During that visit, a small boy who Wallace identified as his son was also present.
At the conclusion of the state's case in chief, the defense rested without presenting any evidence and moved for judgment of acquittal on the grounds that the state had offered no evidence independent of Wallace's confession to establish that Wallace had constructively possessed the narcotics. The trial court initially took the motion under advisement and submitted the case to the jury. The jury found Wallace guilty as charged. Thereafter, the court entertained additional arguments from the parties on the defense's motion for judgment of acquittal and granted the motion. This appeal followed wherein the state argues that the court erred in granting this motion where its evidence was legally sufficient to establish Wallace's constructive possession of and/or trafficking *1129 in the drugs independent of his admissions. We agree and reverse.
Florida law is firmly established that a defendant's confession to a crime cannot form the sole basis for that defendant's conviction for that crime; there must be prima facie evidence of the crime charged (i.e., the corpus delicti) independent of the defendant's confession. See Burks v. State, 613 So.2d 441, 443, 444 (Fla.1993); Johnson v. State, 569 So.2d 872, 873 (Fla. 2d DCA 1990); Jordan v. State, 560 So.2d 315, 318 (Fla. 1st DCA 1990). Corpus delicti has been defined as "`the fact that a crime has actually been committed, that someone is criminally responsible.'" Burks, 613 So.2d at 443 (quoting Ballentine's Law Dictionary 276 (3d ed.1969)) (footnote omitted). The underlying policy reasons for the corpus delicti rule is to ensure that no person is convicted out of derangement, mistake or official fabrication. See State v. Allen, 335 So.2d 823, 825 (Fla.1976); see also Burks, 613 So.2d at 443; Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law § 1.4(b) (2d ed.1986). The state is charged with the burden of proving by substantial evidence that a crime has been committed and such proof may be in the form of circumstantial evidence. See Burks, 613 So.2d at 443.
In this case, the mere presence of the contraband in the closet established that a crime had been committed and that someone was criminally liable. Since the appellee was not found to be in actual possession of the narcotics, the state had the burden of circumstantially establishing his constructive possession of the drugs. To establish constructive possession, the state had to show that the accused had dominion and control over the contraband, knew the contraband was within his presence, and knew of the illicit nature of the contraband. See Brown v. State, 428 So.2d 250, 252 (Fla.1983); Hively v. State, 336 So.2d 127, 129 (Fla. 4th DCA 1976). Where, as here, there was circumstantial evidence that Wallace occupied the premises where the contraband was found, with another, his knowledge of the contraband's presence and ability to control it had to be established by proof independent of his occupancy. See Brown, 428 So.2d at 252. Such proof could consist either of evidence establishing that he had actual knowledge of the presence of the controlled substance on the premises, or evidence of his incriminating statements and circumstances from which a jury might lawfully infer knowledge by him of the presence of the controlled substance or the premises. See Hively, 336 So.2d at 129.
We conclude that the state adduced sufficient prima facie evidence to establish Wallace's constructive possession of the contraband in the apartment. Although not a listed tenant on the lease to the apartment, there was certainly sufficient circumstantial evidence for the jury to reasonably conclude that he resided at the apartment and shared the bedroom closet containing the contraband with Ms. Johnson. As the narcotics were found lying in plain view on the top shelf of the bedroom closet, the jury could have reasonably inferred that Wallace, who is approximately six feet in height, was aware of the drugs' presence in the closet. Moreover, given Wallace's activities at the apartment as observed by the police during their two day surveillance period, the jury could have further reasonably inferred that Wallace exercised dominion and control over the narcotics by transporting them outdoors and distributing them to others. Thus, all of this circumstantial evidence coupled with Wallace's subsequent admissions was sufficient, we think, to establish prima facie proof of the charged crimes and the trial court erred in concluding otherwise. Accordingly, we reverse the order under review and remand with instructions that the jury's verdict be reinstated and the appellee be sentenced.
Reversed and remanded with instructions.
NOTES
[1] The police explained to Ms. Johnson that they preferred to conduct the search with a dog to avoid damaging or tearing any property within the apartment.
[2] The child was taken away by a relative who happened on the scene.